Steve Willey representing the appellants, Utrecht Manufacturing Corporation, and Dick Blick Holdings. This case concerns the proper measure and scope of damages under Washington law in the context of a commercial lease agreement, and the District Court erred in its holdings as a matter of law regarding the measure of damages, both as to temporal duration and the damage components or categories. We would ask that this Court reverse the District Court's judgment and- I want to interrupt for a minute. I don't think this case actually needs a 15-minute argument, so if you could wrap it up faster, that would be good. Go ahead. Are there particular issues the Court would like me to address, Your Honor? I'm sorry, what? Are there particular issues that you would like me to address? Well, I gather the only issue is how much rent reduction there should have been, essentially, right? In other words, what credit should they have gotten against the rent? And your contention is that they should have gotten credit for the improvements, and they say you should have gotten credit for the Starbucks improvements. That is one of the arguments. I would actually suggest that the more important arguments are twofold. One is that the measure of damage time and duration, when you have a lease that is terminated or surrendered and the landlord accepts the surrender or makes the termination, that the  Your first argument is no damages at all. At the time it's terminated, I'm sorry. No damages post-termination. Post-termination. And the problem with that is that you've got a lease here that makes really clear that you're obligated to pay, and the Washington cases say that general common law rule is overcome by specific language in the lease. I would suggest, Your Honor, twofold things. One is the Hargis case contained a lease reservation clause nearly identical to that here. Nearly identical. And the court held there exactly as we were arguing. That is, the damages accrue until the reletting, period. It's the same lease provision, including the reservation clause. It's where you have a termination, and the court holds that that was the correct measure of damages. It also holds Well, in Hargis, the conclusion was the conduct of the parties clearly indicated that it intended to treat the lease as terminated or forfeited in here. They said specifically otherwise, no. I disagree, Your Honor. I believe that what occurred in Hargis and what occurred here are identical. In both cases, there was termination with a reservation. Both cases, termination and reservation. And Hargis is therefore crystal clear where it says the damages accrue until you relet. And then Lacey picks it up and says the exact same thing. So in your view, there can be no circumstance in Washington in which there are post-termination reletting damages? No, Your Honor. I disagree. There actually are different circumstances. It depends on the context. So if there can be, if a contract can provide for that, why doesn't this one? It depends on the It sure seems to. It depends on the posture of both the contract and what the landlord does. Let me posit there are three different circumstances. Number one, you have it where there is no surrender that's been accepted and there's no termination. In that case, it's a vanilla scenario. The landlord is obligated to mitigate and to step into the tenant's shoes for purposes of reletting. That's what they do. That's ordinary. You then are entitled to damages for the entire duration of the lease, less than the offset. Right. That's an ordinary circumstance. We're not there. What's the fight about what the offset is for the moment? Fair enough. The other two circumstances are where you have a lease where the landlord does not accept the surrender, does accept the surrender, or terminates. In that scenario, you have two circumstances. One is where there's a reservation to seek damages, and the other is where there's not. Okay. We're with each other so far. You're in the second category. Termination. You think that this contract doesn't reserve damages or you think that they didn't do it? I think it's actually, it's a binary choice, and I say, I don't agree. Yes, it reserved, and yes, they did reserve, and the law holds that reservation applies until you relet. That's the scenario. So let me go back to my example. In other words, but then we're back to Judge Hurwitz's question, because you seem to be saying that once they relet it, as a matter of law, they can't preserve their right to get damages for any shortfall. That's precisely what Hargis holds and Lacy holds and the Washington practice. So you say that, in fact, you can't override it? No, Your Honor. Here's the way it works, I believe. Really confused. Fair enough. You seem to be saying that even if the contract reserved the right to both terminate and sue for any, or obtain any shortfall, and even if the termination letter did the same, still, once they relet it, their right to any shortfall terminated. Is that what you're saying? Yes. So therefore, it cannot be overridden? No, Your Honor. I respectfully say that what happens where you have, if you have a termination, and the landlord chooses to terminate or accept the surrender, and there is no reservation, it stops right there. I understand that. That's different. That's different from the reservation because that preserves your rent and damages until you relet. It could be three months. It could be two years. I understand that. But I thought, we're just not talking the same language. Was there in this lease a reservation to both terminate and obtain any shortfall once it was relet? Yes, exactly as in Hargis. Was there in the termination letter an assertion of that right? Exactly as in Hargis, yes. Nonetheless, your position is that they cannot get the shortfall. After they relet, just as in Hargis. So in other words, that's what a shortfall is. In other words, getting all of the money for the periods that it wasn't let is one thing, but your position is that no matter how hard they try to let at a fair market value, and even if they did so, and even if they made all the reservations, the reservations are no good. That's your position. That's what the law holds, your honor. Here's what it says in Lacey. This is because where the landlord chooses to treat the leases surrendered and to relet the premises on its own account, the landlord, quote, can recover damages for lost rent up until the date he or she relets the premises. And that's 2015 Westlaw 2345176 at 9. That's the decision. These cases all turn on the notion that the landlord forfeited, and treated the leases forfeited, right? Forfeited, surrendered, terminated. I believe they're true. But there are Washington cases. The Washington case law does seem to say if you got one of these reservation clauses and you put the defendant on notice, properly on notice, there's a second requirement here, that you're going to hold him liable for any shortfall thereafter. We won't treat it as a forfeiture. I respectfully disagree, Your Honor. I believe Hargis is on point. I know you believe Hargis is on point, but in Hargis the Court says generally when it's forfeited, this occurs. And the lease in that case says landlord may at its election declare this lease forfeited, correct? Correct. Does it say that here? Yes, I believe it does. Says forfeited? I believe it says forfeited, and I also believe it reserves right to collect. Right. And then they send, but then they send a notice. Yep. What's the effect of the notice? There's no notice in Hargis. They don't send, they declare the lease forfeited. There's a clause that says I can collect in future rents, but there's no separate notice sent to the client, which is a, you know, I'm now reletting. I'm not sure that the notice has any separate legal weight, Your Honor. I believe it's a belt and suspenders because the contractual provision is what requires, is what controls. Because I read Washington laws requiring that that notice be sent as a prerequisite to seeking lost rents. I don't believe that's the case, Your Honor. The difference case I would look at would be comparing what occurs in Hargis versus what occurs in Brown v. Hayes, which is an old case, 1916, 92, Washington 300. And that case is also discussed in Pollock v. Ives Theater, 174, Washington 65 from 1933. Those are cases in which the court is saying where you evince an interest and an intent to seek damages after the fact, and you give the notice, you have reserved that right. That's what those cases are holding. But Hargis, you know, Hargis is the one that is telling us exactly. See, I'm reading from Hargis, and Hargis says there's nothing illegal or improper in an agreement that the obligation of a tenant to pay all the rents shall remain, notwithstanding there's been a reentry for default. If the parties choose to make such an agreement, there's nothing wrong with that. That's correct, Your Honor. In fact, it's quoting from Metropolitan. Right, right. But look at the language that follows right after that. It's the paragraph that immediately follows. The trial court correctly awarded Hargis the rent which accrued from the date of surrender until the premises were substantially re-let. That's the critical language. It's until they're re-let, and once you re-let. Even now the contract specifically and expressly says otherwise. You did it in Hargis? Yes. But here's my problem with Hargis. Hargis is not a case, I think, about fighting about whether or not the subsequent rent was less than the one the original guy was paying, right? No. Hargis is about whether or not— Hargis, all that was at stake was the rent between the termination and the time of re-letting, correct? That's correct. So therefore, they're applying this clause in Hargis. What they're saying is you're liable for the rent. In other words, it's not a deficiency clause. They're not trying to apply a deficiency in Hargis. All that the landlord was trying to do was collect the rent between termination and re-letting. I agree with you— No, Hargis doesn't tell us what we do in a case in which the landlord is now trying to say, after I re-let, the rent I was getting was much less than I was getting before. I think what Hargis does, Your Honor— Hargis is not directly on point. We are here dealing with the issue that Hargis doesn't deal with. When I say Hargis is directly on point, I mean that the provision in the lease is identical. But they enforced that provision. They enforced that provision in the lease for the entire time period the landlord was worried about. If they didn't enforce that provision, he would not have been able to get rent post-termination. Because the basic rule, absent the contractual provision, is once you terminate, you're done. In this case, the landlord terminated, but nonetheless, Hargis, they let him collect rent post-termination until the time of re-letting. So, you know, the language may be the same, but it's a different case. So tell us what case says that you then can't collect the deficiency. Well, so I'm unaware of any case that is directly on point on that actual issue. And that's the issue in front of us. Yes, I agree. I 100 percent agree. But let me tell you— You want to argue that issue or you just don't? I'm sorry? You simply don't want to argue about the actual offset question? No, I'm happy to argue it. There's a specific question, but I was going to actually answer a question that you had raised. So what Hargis is doing is holding that the re-letting point is a bright line. And what happens is— But was there any—was there an offset in Hargis? We have no idea. Did anybody—for all we know from Hargis, they re-let it at exactly the same rent or higher and there was nothing to offset. Actually, what we know, Your Honor, it was rented at a higher rate. I'm sorry, what? It was rented at a higher rate. So therefore— Right. So there was no offset. So therefore, they didn't discuss the offset question. Actually, they did. What they said was that the rate that was higher was not offset against the prior damages. Well, right. And the reason for this is— Of course not, because the damages were before the re-letting. That's easy. Well, except that, what's going on in Hargis, I believe, conceptually, is the court is saying there's a bright line at the point of re-letting, okay? So when you're the landlord, after you re-let, you don't have any obligation from the tenant anymore, but likewise, you've got no obligation to share any upside— Why are those two things are perfectly illogical to not be treated the same way? Well, I guess the way I look at it is if you talk about Moshin and Law— Unless he was the same, right? The question was trying to get an offset against past damages. Well, what the tenant in Hargis is doing is saying, yeah, you didn't lease for a period of time, and then you re-let and you got more money, so what you have to do is you have to take the entire term of the lease and measure the damages and money you received. And the court quite says—I'd leave Hargis, if I were you right now. I think we understand it. And respond to the issue that Judge Berzon asked you about. You seem to be claiming that, well, look, since you re-let the whole building and they made some improvements to it, we deserve credit. We deserve credit against any damages for that. Those are two different arguments, Your Honor. One argument is you can't charge us for a shortfall that concerns premises that are other than what was leased. This is the Crown Plaza case. They're completely different. They're completely different. Right. And I don't — in what respect are they charging you for that? Here's what Crown Plaza says. The breaching tenant is only liable for rent related to the premises it actually leased. No, we all agree. The factual question is, as I read the district court, what the district court did in this case, it said, the offset is just for the actual space you leased per square foot. They — Starbucks paid something less than you were paying for square foot, and that's the deficiency. So I agree that's what the law says, but why was that law breached in this case? Because when you are mitigating and trying to re-let the premises, it has to be the premises that were actually leased.  Okay, now I understand your argument. Your argument is that if they had only released your portion of the building, they could collect a deficiency, but because they released the entire building, they cannot. Which goes to the issue of where a landlord accepts — Presumably, if they had done that, if they had said, we can't release it because this space is too small, but we could release it as a part of a larger space, you'd say they didn't mitigate. Well, Your Honor, I think they have to mitigate the space that was leased. That's what they have to do. But they did. So suppose they had the opportunity to lease the entire space, but no opportunity to release the smaller space. And they said, okay, fine, therefore we have no opportunity to release the smaller space, so we're not going to lease it. Presumably, you would have said, wait a minute, you didn't mitigate your damages. You could have leased this as part of a larger space. I think, Your Honor, that — Yes or no? Wasn't their mitigation obligation include the opportunity to lease it as part of a larger space if they had that opportunity? No. Really? They could have just said, we're just going to sit here with this empty space the whole time. No. They would have had to lease that space. They would have made reasonable efforts. So what if instead of what they did with Starbucks, they entered into two leases at the identical same price, the former space of your client and the rest of the building? Would they then be entitled to offset it? Yes. So, really? It has to do precisely with the space. And here's why — So, you don't have to tell me why. I just want to know your position. Your position is that that would have been okay? Yes. Okay. Any further questions? All right. I'd like to reserve one minute, please. All right. So you're dropping — all right, fine. Go ahead. Did you want me to address something, Your Honor? I'm not dropping anything. No, it's fine. You never addressed the one question I asked you, but that's fine. Go ahead. Good morning. May it please the Court. Your Honor, it's Reece Farin representing Weiss-Jenkins IV, LLC. And with me in the gallery here are the members and manager of Weiss-Jenkins, Frederick Weiss, Kelly Jenkins, and Eric Weiss. Judge Hurwitz, I want to address one question you asked about whether the qualified forfeiture rule is a two-pronged test. It's actually an alternate test. And this is what all of the cases for the past 90 years have said, from Metropolitan Bank in 1930 to Pollack in 1933, Exeter in 1940, and Houston in 1953. And they all say that a qualified forfeiture occurs when either — I understand. All right. So the landlord could say, even if there wasn't such a clause in the lease, I'm going to hold you liable. In this case, you did both. That's correct. That's correct. I'm sorry. I didn't mean to mislead you with that question. The only thing I was confused about in the case law is these sentences that say something like the measure is the decreased value of the property with and without the lease. And I gather they keep saying that, and then they sort of ignore it. Right. Because it's not the same measure, I don't think, necessarily. Yes, Your Honor. And I think the measure of damages in a breach-of-lease case was historically stated as the present worth of the property independent of the lease. That was a way to, I think, encompass all situations. Typically what happens, and particularly when you have a reletting situation, the evidence is manifest. You know exactly what the damage is because it's what the rent you didn't get, and then the deficiency or shortfall — But that isn't necessarily translated into the value of the property if you were selling the property. That's the problem. I mean, it's not the same — I mean, I don't know this. I'm not a real estate person, but just instinctively from what I do know, I would think that the degree to which the properties value with and without — I mean, for example, if there were a quickly increasing rental market, people might be quite happy to buy a building without the lease, thinking they could rent it at a higher rate than whatever the lease was. So it might be worth more without the lease than with the lease. Well, precisely, Your Honor. And in fact, if you — But that's not the measure that you're arguing for here. Your Honor, generally the value of a commercial lease is the income streams from the rentals. So the loss of a lease — But I just gave you an example in which the income stream might be undesirable rather than desirable, if you're talking about selling it. And I think, Your Honor, in your hypothetical, what's going on is now you have rents rising perhaps higher than what the original lease said, and you may have — so the original lease may have — So the lease is which lease? The lease that — the lease that you're going with and without is the lease that the original lease — Right. So if your original lease was at X dollars per square foot, and that lease happens to be, say, a very below-market lease, then you actually may have improved property value after — Yeah, but here's the — But that's not what happened. Here's the difficulty, and this may not be the Washington measure of value, which is I think what we're trying to get an answer to. The truth is that your building is worth more after their breach of the lease than it was before, or at least it's conceivably worth more because you've got a tenant for the whole building. And so do we compartmentalize that? And for 40 years. Yeah, for a long period of time. And so if one were going to sell the building beforehand with leases in place, with this only one lease to his client, it would be worth X, but if one were going to sell the building thereafter with a long-term lease to Starbucks in it, it would be worth X plus Y. At least that's — I'm hypothesizing that. But the record doesn't deal with that. Why shouldn't that be the measure of damages? Well, and, Your Honor, I also want to point out to the Court that this Court, this Ninth Circuit, in the appeal of the Lacey Marketplace — Which is not a presidential opinion. I understand, Your Honor. But I think — I know. They said Washington says this, but they don't mean it. They really mean something else. Yeah. And if that's what you want to argue, that's fine. I just want to know why isn't that the Washington measure of damages? There were three judges on this Court who said at one point, we don't think so, but we don't — we're not sure enough to make that presidential. And I think what this Circuit said, and what I would agree with, is that the practical reality is that that's how you measure. I mean, you can talk about present worth, but — But we just got an example where — I mean, is your argument that it's not the same? It's the same? Because it isn't the same. So then we just gave him various hypotheticals in which it wasn't the same. Right. So then the question is, is the argument that isn't really what Washington means even though they keep saying it? Your Honor, my response to that is that — is that if the — if the present worth calculations are correct, they should approximate, or they will approximate — All right. Let me ask you a question to answer this case. Did anybody ever put in evidence of the other kind of damages? No. No. So did the plaintiffs ever — did the defendants ever argue for that kind of damages? Not that I'm aware of. And that's — All right. So it's maybe just not in this case. That's correct, Your Honor. All right. But it seems like a problem. Did they attempt to introduce evidence that the judge wouldn't allow to be introduced? I don't — I don't recall. The evidence that I recall that was introduced was a — was an appraisal by the tenant's Right. But there wasn't evidence that the value of the building before breach was X and after breach was Y. That's correct. And I would argue that the appraisal that they actually submitted should not have been considered because — Well, whether or not it should have been considered, it didn't establish the point I'm interested in, did it? Which is that at the time of breach, the value of the building was X. Right. And then at the time of reletting, the value of the building was Y. Did it establish that? Your Honor, I don't want to defend the appraisal submitted by the tenant because, frankly, I don't understand the basis on which — Why did you say that it wasn't — that the appraisal wasn't pertinent? Because when you look at the appraisal, the details, what the appraiser did is he took — he took a valuation of the building before and a valuation after, and he applied completely different cap rates, capitalization rates. And any time you change the capitalization rate, you can change the valuation of the building. The cap rate would have to remain the same. And then he also used the Starbucks lease income to compute the value. Well, we don't need to resort to valuation standards because we know exactly what the old lease said, and we know that we didn't collect rent for 15 months, and now we know for the remaining term, that is through February 28, 2018, if we're comparing apples to apples, we know exactly what the rents that we're getting in are, and they are not anywhere near what Utrecht promised to pay. We start off at 25, so there was a rent abatement for nearly a year. A Starbucks didn't have to pay a dime. But that's an argument that — there's a twofold — two questions here. One is, is that relevant at all? And the second question is, if it is relevant, now you're making arguments about the weight of the evidence, aren't you? So, in other words, I mean, what I'm getting out of this is that this alternative way of measuring was at least on the table, but you believe the evidence just introduced was not adequate for that purpose. Yes, I believe it was adequate. That's not what Judge Reishel — or the district judge, I'm sorry. Well, let me approach this — let me approach this — Let me approach this a different way, Your Honor. When the parties stipulate in their lease contract what their formula of damages is going to be, that's the amount the court should apply. I think we've gotten too far off track in terms of what the common law says and what the — what damages are in, you know, the abstract. That's a different argument. If the lease said, well, we reserve the right to seek damages, then we might not measure it by comparative rents. And, Your Honor, I'll read you verbatim from the lease. It says — I mean, we should have said that at the beginning. We might have gotten off the — because I just found the language odd, and the language in Lacey is saying that, well, they say X, but they mean Y odd. Right. But you're saying it doesn't matter what they mean because it's always in the contract. Yeah, I'm arguing academics, Your Honor, but the contract actually says, Therefore, as such, monthly deficiencies shall arise. So the deficiency is obviously the — Now, your opponent did not, and you — I thought the only real issue in this case was what do you do with the improvements in the Starbucks — that Starbucks has made with regard to crediting, and nobody wants to argue about that, so fine.  And I believe — well, first of all, those improvements, such as they were, those were to benefit Starbucks. Starbucks came in with this new roastery concept. They found a building. They said, We're going to try this out. It was essentially an — Can I stop you for a second here? Please. Because I assume all that's true. The question is whether or not it's relevant. In other words, if it's relevant, then the question is, did they prove that there was an improvement to the building? But your position in the briefs is it doesn't matter. They could have turned it into the Taj Mahal. The improvements don't matter. Is that Washington law? Yes, Your Honor. That's Washington. That is Hargis, and that's — and as affirmed by Lacey, essentially — For example, certainly, insofar as you're talking about, you know, how they built it out physically with what walls they put up and what logos they put up and all that, I understand all that. But there was some indication that, or let's assume it either is true or could be true, that they redid all the electrical work in the building. I don't know if — there was some assertion of something like that. But if they did that, even if they did it for their own purposes, that must have some value for the building permanently. Not for the term that my client leases out that building, Your Honor. Because the reality is, all my client gets, they don't get the building back. Plus it had an earthquake. Well, then we've got — Pressure fitting. Yeah, we've got insurance that will — I'm sorry, what? We've got insurance that will deal with catastrophic situations. Your point is your client's not the owner? You know, in a true commercial lease where the tenant comes in and they take over, in a sense that's true. We really don't have a lot left other than a residual. Well, we get lease income. We get monthly cash every month. But we don't get that building back for as long as 40 years. Well, as short as five. Five from now. That's correct, Your Honor. Ten total, five from now. And at the time that we entered into the lease, there was no promise. Starbucks didn't promise us that they were going to do any improvements. In fact, Starbucks made it very clear and they were very careful to not take on any obligation to do so because it was an experiment for them. And it's interesting because I've not seen a commercial lease dealing with tenant improvements where the tenant actually says, I'm permitted to make improvements, but I don't have to make any improvements. And then a work letter dealing with those TIs that say, well, I'm going to make, you know, the TIs I'm going to make, I'll make them and complete them as I deem necessary. So Starbucks was clear that they didn't have to do anything. And in that one-year period. So essentially your argument is that all that's relevant in terms of improvements is what the lease requires. Because for one thing, if you did it the other way, what time period would you look at? I mean, suppose they do, you know, a bunch of improvements this year and a bunch more in ten years and so on. That's correct, Your Honor. And I, Your Honor, is really getting at what I think Judge Robart mentioned in the Lacey trial court decision, which he said that, you know, the less, the landlord, the lessor gets rent now, the argument is that there's some speculative future benefit. And in this case, there isn't anything during the lease term. And if, you know, we're struggling with an intangible or future benefit, then the policy of the law is that it, the law should not be effectively rewarding a breaching tenant for its poor performance, for its defaulting. And that if there is any, if there is a benefit, that that should accrue to the landlord. So as a matter of law, the tenant doesn't get the benefit of that. I mean, I thought of hypotheticals and, you know, what if Starbucks had said, we're not going to do all these improvements, we're just going to change one partition wall or demising wall. And when they opened the wall up, they found a bar of gold that nobody knew about. And would they say, well, that's great, you got a benefit. You would never have known that but for the fact that we breached the lease. So, you know, you should thank us and you should set off the damages. I've read Lacey 1, if you will, Judge Robart's decision, which seems very well reasoned. It also seems to suggest that this is not a settled issue under Washington law because he doesn't cite a Washington Supreme Court decision that so holds. Is that a fair characterization? If you're talking about the issue regarding the benefit. Improved market, yeah. You know, I think Hargis was emphatic, though, in its. Right, there's language in Hargis. But there's no Washington Supreme Court case actually dealing with this, is there? Not a Washington Supreme Court case, no. But Hargis, I think, was well reasoned in that regard and quoted not just, it didn't make up its own thinking. It quoted the New Jersey case, which was much more about the opinion. And I'm very fond of New Jersey cases. I ask to this question of the measure of damages. Is that what you're talking about? Yes. That's what I was asking about. Yes, Your Honor. I see my time is up. That's sort of the interesting issue in the case. But I can't tell the degree to which it was teed up. All right. Thank you. Thank you, Your Honor. I'd like to make three quick points. Number one, when we look at the benefit of a new lease and you're measuring it, you cannot limit yourself to the rent itself. You have to look at the bundle of economic benefits. And this goes to the renovation issue. Let's talk about that. But the renovation issue. Well, first of all, let me back up. Are you arguing, or did you ever argue in this case, that the measure of damages should have looked at the value of the building before and after and not the rent minus the improvements? Yes. There are two appraisals in the record. One of them, the plaintiff's own appraiser, said that the building value before and after breach declined by $20,000. Our appraiser said it went up by $50,000. And you can see that at ER 462 and I think 291. And then what? I'm sorry? Did the district judge ever deal with that? He said that was not an appropriate measure. He decided to decline to apply it. And that's the value of the building? That's the value of the building. Now, the separate question is, did you ever preserve the argument below that with respect to the space, the improvements made to it should be created against your deficiencies? Yes, we did. We put in two different things there. One is we got the owner's own representation that the property had received a total renovation, including seismic retrofit, new electrical service distribution, new fire alarm, new security system, new water service, new fire sprinkler, new plumbing, new HVAC, building envelope upgrades, and a new roof. I'm not looking for what was put in it. Did you put in evidence of the value? Yes, and we put in evidence of the value also via the permitting with the City of Seattle. And that was $5.5 million, I believe. But this is the problem. It's not in the lease that they had to do any of this. You're correct. We don't – just a minute. Okay. So suppose they hadn't done any of it until next year, right? I mean, how do you take something like this into account when, if you're trying to set it off against rent, if there was no obligation to do it, and we don't know how long it's going to last, we don't know when they're going to do it, how would you take it into account? I think you're raising a question about the weight of evidence, Your Honor. No. Because it goes to timing. For example, there is case law that says you have to measure your benefit to the landlord of a new lease where there's avoided cost, okay? So if we knew that this building required, for example, the seismic retrofit that was done, that's an avoided cost and that's a benefit, right? And that this occurred and is a benefit obtained without dispute. Whether it matters legally is the question before the court. Right, because it's not a condition of the lease. That's correct. It's not a condition of the lease. And I was just pointing out that there are practical difficulties when it is a condition of the lease of putting any particular value on it. I agree that there are challenges. I also believe it goes to the question of the weight of evidence because it has to do with the timing and how much application the court or jury fact finder would give to it. Okay. I have one last point I want to make, which is the premises issue. The issue of what is the physical space is critical, and it links to whether or not the landlord has terminated or not. The space that my tenants had was a small retail space with windows on the corner and a corner entrance. That space is one that ordinary course leases at a higher rate than an entire building, including a garage. That's why when you're comparing mitigation obligations, you have to focus on the space. And by the same token, if what I was leasing in the first instance was a garage, then you have to be looking at a garage comparison. It has to be apples to apples, not apples to oranges. If you have any further questions. Okay. Thank you very much. The case of Weiss-Jenkins v. Utrecht Manufacturing is submitted.
judges: Berzon, Hurwitz, Dearie